FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 10 2026

TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF ARKANSAS**

**MATTHEW LEWARN** **PLAINTIFF**

**v.** **Case No.** 4:26-cv-926-JM

**HOT SPRINGS VILLAGE PROPERTY OWNERS ASSOCIATION** **DEFENDANT**

**COMPLAINT**

Plaintiff, Matthew Lewarn, by and through his undersigned counsel, and for his Complaint against Defendant, Hot Springs Village Property Owners Association alleges and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Matthew Lewarn ("Plaintiff"), is a resident of Saline County, Arkansas, who worked for Defendant, Hot Springs Village Property Owners Association ('Defendant"), in Saline County, Arkansas.

2. Defendant is a property owners association organized and existing under the laws of the State of Arkansas, with its principal place of business in Saline County, Arkansas, and conducts business in both Saline and Garland Counties.

3. This action is brought under the Age Discrimination in Employment Act of 1967 (ADEA), and the Family and Medical Leave Act (FMLA). Plaintiff has timely filed an EEOC charge and filed suit less than ninety days after receiving a right to sue letter.

4. This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331.

5. As the events giving rise to this Complaint arose within this Court's district, venue is proper pursuant to 28 U.S.C. § 1391(b).

This case assigned to District Judge Moody
and to Magistrate Judge Ervin

## FACTUAL ALLEGATIONS

5. Plaintiff began his employment with Defendant in or around March of 2012.

6. Plaintiff worked for Defendant for more than a decade, in the role Golf Sales & Operations Manager primarily in the Golf Department, where he consistently generated revenue for the Defendant and received strong performance evaluations throughout his tenure.

7. Throughout his employment, Plaintiff performed his job duties satisfactorily and met or exceeded Defendant's legitimate expectations.

8. In or about January 2025, Defendant demoted Plaintiff from Golf Sales & Operations Manager to Golf Operations Manager. Defendant justified the demotion by asserting that Plaintiff was not a "salesperson" but merely an "order taker," a characterization that ignored Plaintiff's documented performance metrics, length of service, and consistently satisfactory evaluations.

9. Defendant routinely denied Plaintiff access to promotional opportunities. Similarly situated employees with comparable or lesser qualifications were not subjected to the same treatment, while employees of 40 years of age or older were disproportionately demoted, marginalized, or terminated.

10. There were plenty of instances where promotional opportunities were unavailable to Plaintiff.

11. In the years leading up to Plaintiff's termination, the workplace environment deteriorated significantly.

12. Plaintiff was repeatedly subjected to verbal hostility from senior leadership, including public belittlement, the use of foul and derogatory language, and exclusion from key decisions affecting his department.

13. General Manager Kelly Hale engaged in repeated verbal abuse toward Plaintiff and others, including the use of offensive and degrading language in the workplace.

14. Plaintiff was also subjected to an arbitrary demotion by General Manager Ken Unger ("Mr. Unger") without legitimate explanation.

15. Plaintiff's direct supervisor, Tom Heffer, was aware of ongoing conflict between Plaintiff and Mr. Unger as early as November 2024, months before Mr. Unger was promoted to General Manager of the Golf Department in January 2025, giving Defendant actual notice of the hostility Plaintiff would face under Mr. Unger's supervision.

16. On August 25, 2026, Hot Springs Village resident and golfer Mark Drew ("Mr. Drew") addressed Defendant's Board of Directors at a public board meeting and described a pattern of destabilizing management by Mr. Unger within the Golf Department, such as a high turnover rate m including resignations and termination. Mr. Drew also mentioned that Defendant forced retirement of the former manager of Granada Golf Course, who died two weeks later. As a result, Mr. Drew expressed the distrust that a majority of the Hot Springs Village golfers had against the Defendants' Golf Department.

17. Mr. Drew further informed the Board that, upon information and belief, an employee had recently terminated within days of complaining to Defendant's HR Department about coworkers' conduct, and he called on the Board to form an independent investigative committee, evidencing that Defendant's practice of retaliating against employees who report workplace misconduct concerns has continued and is recognized within the Hot Springs Village community.

18. Older employees, of 40 years of age and older, including Plaintiff, were increasingly marginalized, demoted, or otherwise treated less favorably without legitimate business justification.

19. At all relevant times, Plaintiff was over the age of 40 and was within the class of individuals protected under the ADEA.

20. Plaintiff also suffered from serious medical conditions, such as severe stress-related conditions, that substantially limited one or more major life activities.

21. On or about May 5, 2025, Plaintiff made a formal complaint to Defendant's Human Resources Department regarding what he reasonably believed to be a hostile work environment.

22. Plaintiff's complaint specifically identified instances of verbal abuse, the use of foul and derogatory language by management, which Plaintiff reasonably believed was related to and motivated by his age, his demotion, and the negative physical and emotional impact the work environment had on him.

23. Plaintiff's complaint constituted protected activity under Title VII.

24. On or about May 5, 2025, Plaintiff also began taking leave protected under the FMLA based on physician documentation confirming his need for leave due to stress-related medical conditions.

25. Plaintiff was entitled to FMLA leave, and his leave was medically certified and approved by Defendant pursuant to a letter dated May 16, 2025.

26. During Plaintiff's FMLA leave, Defendant interfered with his rights by contacting him regarding work-related matters.

27. Defendant's conduct interfered with, restrained, and denied Plaintiff's exercise of his FMLA rights.

28. In or around July 2025, Plaintiff sought to return to work and contacted Human Resources to inquire about the status of his complaint and the protections that would be in place to prevent retaliation.

29. Defendant failed to provide Plaintiff with any meaningful response or assurance that his concerns had been addressed. Defendant's only response came in a letter from Human Resources Manager Duane Tarbert dated July 28, 2025, which reported that Defendant's investigation had found nothing to substantiate Plaintiff's complaint and directed him to return to work, without providing any assurance or explanation of what protections, if any, would be implemented to prevent further hostility.

30. On or about August 7, 2025, shortly after Plaintiff's protected complaint and during the period surrounding his protected FMLA leave, Defendant terminated Plaintiff's employment by certified letter, constituting an adverse employment action.

31. Defendant asserted that Plaintiff had abandoned his job due to his failure to return to work following the expiration of his approved FMLA leave, and for failure to supply Defendant with a medical release from his primary care physician ("PCP") clearing his return to work.

32. Plaintiff did not abandon his job and remained willing and able to return to work following his protected FMLA leave.

33. The timing of Plaintiff's termination, occurring shortly after his protected activity and during the period surrounding his FMLA leave, gives rise to a strong inference of unlawful retaliation.

34. At all relevant times, Plaintiff's need for leave was supported by physician documentation confirming the medical necessity of his absence.

35. Defendant's actions were contrary to its own internal policies, including its policies regarding workplace harassment, FMLA leave, and reasonable accommodation under the ADA.

36. Rather than complying with these policies, Defendant permitted a hostile work environment to persist, failed to accommodate Plaintiff's disability, interfered with his FMLA rights, and terminated his employment after he engaged in protected activity.

37. Plaintiff received a right to sue letter from the EEOC on June 24, 2026.

**Count I – FMLA Interference**

38. Plaintiff realleges the foregoing as if fully set out herein.

39. At all times relevant, Defendant was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4). Defendant is an entity engaged in commerce or in an industry or activity affecting commerce who employees 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

40. At all times relevant, Plaintiff was an "eligible employee". He had worked at least 12 months for the Defendant, and worked at least 1,250 hours of service with Defendant during the previous 12-month period before his termination date, pursuant to the FMLA, 29 U.S.C. § 2611(2).

41. Plaintiff was entitled to take FMLA leave for a serious health condition pursuant to 29 U.S.C. § 2612(a)(1)(D), which was advised by his PCP on May 5, 2025.

42. Plaintiff provided Defendant with adequate notice of his need for leave under the FMLA by submitting a request on May 5, 2025. Defendant approved Plaintiff's request by letter dated May 16, 2025, thereby entitling Plaintiff to up to twelve (12) weeks of unpaid, job-protected leave.

43. On or about June 2025, Plaintiff sought to return to work and on August 12, 2025, Defendant terminated him by certified letter, citing that he had abandoned his job due to his failure to return to work following the expiration of his approved FMLA leave, although his

twelve (12) week entitlement of FMLA leave had not expired, and his failure to provide a medical release from his PCP clearing him to return to work.

44. Defendant interfered with Plaintiff's exercise of FMLA rights by contacting him during his FMLA leave regarding work matters; thereby, discouraging and restraining Plaintiff's ability to take leave free from work obligations.

45. Defendant also interfered with Plaintiff's exercise of FMLA right by failing to restore him to the position he held at the commencement of his leave, or to an equivalent position, and instead terminating his employment on or about August 7, 2025.

46. As a direct and proximate result of Defendant's conduct, Plaintiff suffered including but not limited to lost wages, loss of employment, and equitable losses requiring reinstatement.

**Count II – Retaliation under the Opposition Clause of the ADEA**

47. Plaintiff realleges the foregoing as if it is fully set out herein.

48. At all times relevant, Defendant was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b), as an entity engaged in an industry affecting commerce with twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

49. The ADEA prohibits employers from discriminating against an employee because the employee has opposed any practice made unlawful under the ADEA, 29 U.S.C. § 623(d).

50. Plaintiff engaged in statutorily protected activity when he opposed conduct that he reasonably and in good faith believed constituted unlawful discrimination and harassment because of age, in violation of the ADEA.

51. Plaintiff's protected activity included, but is not limited to, reporting and complaining

to Defendant's Human Resources Department about workplace conduct he reasonably believed to be discriminatory and unlawful. Specifically, the discriminatory conduct Plaintiff opposed included Defendant's pattern of age-based hostility and disparate treatment toward Plaintiff and other employees 40 years of age and older, including: Defendant's demotion of Plaintiff from Golf Sales & Operations Manager to Golf Operations Manager based on a pretextual characterization of Plaintiff as an "order taker" rather than a "salesperson" that disregarded his tenure and documented performance; Defendant's denial of promotional opportunities to Plaintiff while similarly or less qualified younger employees were promoted, and while employees 40 years of age and older were disproportionately demoted, marginalized, or terminated; repeated verbal abuse, public belittlement, and the use of foul and derogatory language directed at Plaintiff by senior leadership, including General Manager Kelly Hale and Ken Unger; and Defendant's broader patterns of marginalizing and demoting older, long-tenured employees without legitimate business justification. Plaintiff reasonably and in good faith believed, and continues to be believe, that this conduct constituted unlawful discrimination and harassment because of age.

52. Plaintiff's belief that the conduct he opposed was unlawful was objectively reasonable and made in good faith.

53. Plaintiff's manner of opposition was reasonable and did not exceed the bounds of protected conduct.

54. Following Plaintiff's protected activity, Defendant subjected Plaintiff to a materially adverse employment action by terminating him on or about August 7, 2025. Termination would dissuade a reasonable employee from engaging in protected activity under the opposition clause of the ADEA, 29 U.S.C. § 623(d).

55. Plaintiff's protected activity was the "but for" cause of Defendant's decision to subject him to materially adverse actions, including his termination, as demonstrated by the close temporal proximity between Plaintiff's protected activity and his termination, in addition to evidence of severe age-based workplace harassment against Plaintiff, which supports Defendant's retaliatory motive. "But for" Plaintiff's protected activity in opposing what he reasonably believed to be unlawful age discrimination, Defendant would not have terminated his employment.

56. Defendant's stated reasons, that Plaintiff's failure to return to work after the expiration of his FMLA leave, for its actions are pretextual and were not the true reasons for the adverse employment action.

57. Defendant intentionally retaliated against Plaintiff because of his protected opposition to unlawful employment practices.

58. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, and other compensable injuries.

**Count III – Unlawful Age Discrimination in Violation of the ADEA**

59. Plaintiff realleges foregoing as if fully set out herein.

60. Plaintiff was, at all relevant times, at least forty (40) years of age and therefore a member of a protected class under the ADEA.

61. Plaintiff was qualified for his position and performed his job duties in a satisfactory and competent manner throughout his employment, supported by the fact that Plaintiff received consistent evaluations that he met job expectations in his role.

62. The ADEA prohibits employers from discharging or otherwise discriminating against

an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age.

63. Defendant subjected Plaintiff to an adverse employment action, including but not limited to his demotion on January of 2025 and his termination on or about August 7, 2025.

64. Plaintiff was treated less favorably than similarly situated, younger employees with respect to the terms and conditions of employment, and such younger employees where given promotions to supervisory positions.

65. Upon information and belief, Plaintiff was replaced by, or his duties were reassigned to, one or more substantially younger individuals.

66. Defendant's adverse employment actions were taken because of Plaintiff's age.

67. Plaintiff's age was the "but-for" cause of Defendant's decision to subject him to adverse employment actions.

68. Defendant's conduct reflects a pattern and practice of discriminating against older, long-tenured employees, including demoting or marginalizing such employees without legitimate business justification.

69. Defendant intentionally discriminated against Plaintiff because of his age, in violation of the ADEA.

70. Defendant's conduct was willful and in reckless disregard of Plaintiff's rights under the ADEA.

71. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to loss of employment, lost wages, lost benefits, emotional distress, and other compensable injuries.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award the following relief.

a. Compensatory and punitive damages;

b. An award of back pay, lost wages, lost benefits, and all other compensation and benefits to which Plaintiff would have been entitled but for Defendant's unlawful conduct;

c. An award of reasonable attorneys' fees, expert fees, and costs pursuant to applicable statutes;

d. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

By: ______________________________

Jenny Holt Teeter, ABN 2007140
GILL RAGON OWEN, P.A.
425 West Capitol Ave., Suite 3800
Little Rock, Arkansas 72201
Telephone: (501) 376-3800
teeter@gill-law.com